PEOPLE v HUGHEY

Docket No. 117157. Submitted October 10, 1990, at Grand Rapids. Decided December 17, 1990, at 9:05 A.M. Leave to appeal sought.

Sebastian S. E. Hughey was convicted of two counts of first-degree felony murder following a jury trial in the Muskegon Circuit Court, R. Max Daniels, J. The defendant appealed, alleging that the trial court erred in refusing to grant his motion for a directed verdict of acquittal, in admitting his confession into evidence, and in instructing the jury, and that its verdict was against the great weight of the evidence.

The Court of Appeals *held:*

1. The trial court properly refused to grant the defendant's motion for a directed verdict of acquittal. The prosecution established the corpus delicti of first-degree felony murder independently of the defendant's confession by establishing that the victims' deaths occurred and that they resulted from a criminal agency; the question whether the defendant was capable of forming the specific intent necessary to commit the underlying felony was properly left to the jury; the element of malice for the murder was established beyond a reasonable doubt; and the intent to commit larceny was properly submitted to the jury.

2. The determination of the trial court that the defendant's confession was voluntary, in light of the totality of the circumstances, does not leave a definite and firm conviction that a mistake was made.

3. The trial court's instruction of the jury was proper.

4. The defendant's failure to move for a new trial precludes appellate review of whether the verdict was against the great weight of the evidence.

Affirmed.

REFERENCES

Am Jur 2d, Evidence §§ 530, 1136, 1137; Homicide §§ 46, 284, 285, 432.

See the Index to Annotations under Confessions and Admissions; Corpus Delicti; Felony Murder Doctrine.

Homicide — Felony Murder — Corpus Delicti.
> The corpus delicti of first-degree felony murder is established by a showing that a death occurred and that it resulted from a criminal agency.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Tony D. Tague,* Prosecuting Attorney, and *Kevin A. Lynch,* Assistant Prosecuting Attorney, for the people.

*William E. Jackson,* for the defendant.

Before: MacKenzie, P.J., and Sawyer and R. B. Burns,* JJ.

Sawyer, J. Defendant was convicted, following a jury trial, of two counts of first-degree felony murder. MCL 750.316; MSA 28.548. Defendant was sentenced to two terms of life in prison without parole. He now appeals and we affirm.

We first collectively consider three arguments raised by defendant that the trial court should have granted defendant's motion for a directed verdict of acquittal. Specifically, defendant argues that the motion should have been granted because the prosecutor failed to prove the corpus delicti of the crime prior to the introduction of defendant's confession, because the prosecutor could not establish that defendant could form the specific intent to kill because of diminished capacity due to the consumption of drugs, and because the prosecution failed to show all of the essential elements of the crimes charged. We disagree.

Turning to the first issue, whether the prosecutor established the corpus delicti of the crime independent of defendant's confession, we conclude that he did. First, we must determine what consti-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

tutes the corpus delicti of the crime of first-degree felony murder. Defendant cites *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), which adopted the dissenting opinion of Judge LEVIN in the Court of Appeals decision in *Allen,* 39 Mich App 483, 494; 197 NW2d 874 (1972), wherein the Court opined that the corpus delicti rule required that each and every element of the offense be established. See 39 Mich App at 496.

However, the Supreme Court revisited the corpus delicti rule, in the context of first-degree premeditated murder, in *People v Williams,* 422 Mich 381; 373 NW2d 567 (1985). In *Williams,* the Court concluded that the corpus delicti rule does not require the introduction of evidence on each of the essential elements of the offense, but rather, for first-degree premeditated murder, the corpus delicti consists of a showing of the death of the victim and some criminal agency as a cause of the death. *Id.* at 392. The Court explained that it is unnecessary to establish what degree of homicide is committed in order to establish the corpus delicti:

> It is an inaccurate and unwarranted reading of the history and purpose of the corpus delicti rule that suggests the need for independent proof of each and every element of the particular grade and kind of common-law or statutory criminal homicide charged as a condition of admissibility of a defendant's confession. Such an understanding of the corpus delicti rule loses sight of the historic reason for the rule; to avoid conviction for a homicide that did not occur. The logic of the rule is not served by extending it to require proof, *aliunde* the defendant's confession, not only that a particular deceased lost his life and that the loss is a result of criminal agency but, in addition, proof of the aggravating circumstances which move the seriousness of the crime up the scale of criminal

accountability (measured by the severity of the penalty) from manslaughter to second-degree murder or to first-degree murder. Whatever the aggravating circumstances which constitute a crime, second-degree murder instead of manslaughter, or first-degree murder instead of second-degree murder, the danger that a defendant would confess to a criminal killing which never occurred is adequately obviated when it is shown, other than by the accused's confession, that the deceased victim died as a result of a criminal agency. [*Id.* at 391.]

Moreover, the *Williams* Court considered the effect of its earlier ruling in *Allen,* and distinguished *Allen* on the basis that *Allen* involved felony murder, rather than premeditated murder. It further distinguished *Allen* because *Allen* preceded the Supreme Court decision in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), noting that at the time *Allen* was decided even an accidental homicide occurring during the commission of a felony would support a felony-murder conviction while, after *Aaron,* the killing had to constitute common-law murder. *Williams, supra* at 388, n 3.

The question which arises then is: What effect does the *Williams* decision have in felony-murder cases? We conclude that the reasoning behind the *Williams* decision equally applies to felony-murder cases, particularly in light of the decision in *Aaron, supra.* That is, the purpose of the corpus delicti rule is also served in felony-murder cases if it is merely required that the prosecutor establish a death and that the death resulted because of some criminal agency, without requiring the additional showing of the remaining elements of felony murder, including the commission of the underlying felony. In both cases, by establishing that a death has resulted because of a criminal agency, the possibility of a defendant confessing to a nonexistent homicide is precluded.

Moreover, the Court in *Williams* specifically stated that the corpus delicti rule does not require a showing of evidence in support of the determination of the particular degree of homicide committed, allowing, instead, for the degree of homicide to be established by the defendant's confession. *Id.* at 392. We see no reason, therefore, to distinguish between premeditated murder and felony murder by requiring the prosecutor to establish, independently of the defendant's confession, the aggravating circumstance in felony murder—the underlying felony—which raises the homicide to first-degree murder, while in premeditated murder the prosecutor has no such burden of establishing, independently of the defendant's confession, the element of premeditation and deliberation.

For the above reasons, we conclude that the Supreme Court's decision in *Williams,* had the effect of overruling its prior decision in *Allen,* and conclude that the corpus delicti rule is satisfied in prosecutions of first-degree felony murder, as well as prosecutions of first-degree premeditated murder, by showing that a death has occurred and that the death resulted from a criminal agency.

Turning to the case at bar, the prosecutor presented the testimony of fifty-two witnesses before offering defendant's confession. Among those fifty-two witnesses was Dr. Henry DeLeeuw, the Muskegon County Medical Examiner, who testified that he had performed autopsies upon the bodies of the victims, that Mae Middleton had suffered a total of twenty stab wounds plus five or six additional lacerations, and that William Middleton also had suffered a number of stab wounds and lacerations. Dr. DeLeeuw further testified that both victims had received a number of defensive wounds to their hands and that, in both cases, the cause of death was hemorrhaging due to the knife wounds.

Dr. DeLeeuw also opined that the victims were dead and had, in fact, pronounced them dead at the scene. Accordingly, we conclude that the prosecutor, independently of defendant's confession, did establish the corpus delicti of the crimes charged, namely, two counts of first-degree felony murder, in that it was established that Mae and William Middleton were dead and that their deaths were due to a criminal agency.

Next, we consider the question whether the trial court erred in denying defendant's motion for directed verdict on the basis that defendant had established evidence of diminished capacity and, therefore, was entitled to a directed verdict of acquittal with regard to the murder charges. We disagree. In reviewing a motion for directed verdict, the evidence must be viewed in the light most favorable to the prosecution and a determination made whether a rational trier of fact could find that the essential elements of the charged offense were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). Defendant argues that his use of drugs precluded him from forming the necessary intent to commit the murder. Voluntary drug intoxication could be a defense to felony murder to the extent that the underlying felony is a specific intent crime (which is the case here since the underlying crime was larceny) and that the intoxication precluded the defendant from being able to form the specific intent required to commit the underlying offense. See *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973), and *People v Mahaday,* 108 Mich App 591; 310 NW2d 805 (1981).[1] In the

---

[1] Defendant also argues that intoxication could be a defense in that it would defeat the element that he possessed the specific intent to kill. Defendant's argument is flawed, however, because felony murder does not require proof of the specific intent to kill. Rather, since

case at bar, we believe that the trial court properly left the question of intent for the jury to determine. See *People v Queenan,* 158 Mich App 38, 55; 404 NW2d 693 (1987).

Next, we turn to defendant's argument that the trial court erred in denying his motion for directed verdict on the basis of the argument that plaintiff failed to prove malice, intent, premeditation, deliberation, and the intent to commit a larceny. We find no error. First, we should point out an assumption underlying defendant's argument that is pervasive throughout his brief on appeal and which is incorrect, namely, that premeditation and deliberation are elements of first-degree felony murder. First-degree felony murder is a second-degree murder, which does not require premeditation or deliberation, committed during the course of one of the enumerated felonies. *Aaron, supra* at 734. Thus, the only mens rea requirement for felony murder (in addition to the mens rea required for the underlying felony) is that required for second-degree murder, namely, malice, which is defined as the intent to kill, the intent to inflict great bodily harm, or acting with a wanton and wilful disregard of the likelihood that the natural tendency of the defendant's behavior is to cause death or great bodily harm. *Aaron, supra* at 733.

Thus, we may narrow our inquiry to determine whether a rational trier of fact could conclude that

felony murder is essentially a second-degree murder committed during the course of one of the enumerated felonies, it merely requires the general malice element of second-degree murder. See *Aaron, supra* at 733. See also *People v Langworthy,* 416 Mich 630, 652; 331 NW2d 171 (1982) (second-degree murder is a general intent crime for which the defense of voluntary intoxication may not be asserted). Accordingly, we conclude that first-degree felony murder is a general intent crime for which the defense of voluntary intoxication may not be asserted *except* to the extent that the underlying felony is itself a specific intent crime, in which case the defense of involuntary intoxication may be asserted to negate the specific intent required to commit the underlying felony.

the essential elements of malice for the murder and intent to steal for the larceny could be found beyond a reasonable doubt. Given the large number of wounds of the victims, including the infliction of defensive wounds, we conclude that a rational trier of fact could determine that the malice element of murder was established beyond a reasonable doubt. As for establishing the intent to commit the larceny, in view of defendant's possession of recently stolen property and disposal of stolen property, as well as statements made during his confession, we conclude that the trial court properly submitted the issue to the jury for determination. See *People v Bradley,* 54 Mich App 89, 93; 220 NW2d 305 (1974).

We next consider defendant's argument that the trial court erred in admitting defendant's confession into evidence. Defendant presents two separate arguments regarding this issue. First, defendant argues that his confession should have been suppressed because it was involuntary. Specifically, defendant claims that his confession was merely a product of his adopting the suggestions made by the police officer and that he was psychologically predisposed toward accepting the statements made by a person in a position of authority. The determination whether a confession is voluntary must be made by looking at the totality of the circumstances. We will not disturb the trial court's findings in this regard unless we are left with the definite and firm conviction that a mistake has been made. *People v Stricklin,* 162 Mich App 623, 635-636; 413 NW2d 457 (1987). In looking at the totality of the circumstances in the case at bar, we are not left with a definite and firm conviction that the trial court made a mistake in determining that defendant's confession is voluntary and, therefore, admissible.

Defendant also argues that his confession should have been suppressed because it followed an unlawful arrest without a warrant and is, therefore, the proverbial fruit of the poisonous tree. A review of the lower court record, however, clearly shows that defendant misrepresents the facts in this regard. The record reveals that a warrant was issued for defendant's arrest on May 4, 1988, with the return of the warrant, indicating that defendant had been taken into custody, dated May 5, 1988. Moreover, the confession at issue was taken on May 5, 1988, between 12:18 and 12:34 P.M. Thus, defendant's statement in his brief on appeal that the record "is loudly silent on the issue whether the police had an arrest warrant at the time that Defendant Hughey was arrested" is inaccurate, and defendant's argument is without merit.

Defendant next argues that the trial court erred in instructing the jury by leaving out the element of malice, required for a conviction of second-degree murder, and the elements of premeditation and deliberation, required for a conviction of first-degree murder. Taking the second point first, as discussed above, defendant misapprehends the state of the law in Michigan. As previously discussed, premeditation and deliberation are not elements of first-degree felony murder, and, therefore, the trial court committed no error in failing to instruct the jury regarding premeditation and deliberation. With respect to the instructions regarding second-degree murder, defendant argues that the trial court erred in not instructing the jury regarding the element of "malice aforethought." A review of the lower court record discloses that defendant either misrepresents or misapprehends the trial court's instructions to the jury. A review of the jury instructions clearly

indicates that the trial court did, in fact, instruct the jury on the element of malice required to establish a second-degree murder. Specifically, the trial court instructed the jury that it must find that defendant acted with a certain mens rea, namely, the intent to kill, the intent to do great bodily harm, or the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was a probable result of the act. This is the malice element required for second-degree murder and, for that matter, for felony murder. See *Aaron, supra* at 728-729.

Finally, defendant argues that the jury verdict was against the great weight of the evidence. Defendant has, however, waived appellate review of this issue by failing to move for a new trial in the trial court. See *People v Gonzalez*, 178 Mich App 526, 532; 444 NW2d 228 (1989).

Affirmed.