# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL JEROME CARROLL,

      Defendant-Appellant.

UNPUBLISHED
October 14, 2014

No. 317174
Oakland Circuit Court
LC No. 2013-244609-FH

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

Michael Jerome Carroll appeals as of right from his jury trial convictions of second-degree fleeing and eluding a police officer,[1] carrying a concealed weapon (CCW) in a vehicle,[2] operating a motor vehicle while intoxicated,[3] and driving with a suspended or revoked license.[4] Carroll was sentenced, as a fourth habitual offender,[5] to 6 to 50 years' imprisonment for second-degree fleeing and eluding, 6 to 15 years' imprisonment for CCW in a vehicle, as well as 134 days in jail for each the driving while intoxicated and driving with a suspended or revoked license convictions (with credit for 134 days served). All sentences were to run concurrently to each other, but consecutive to his existing parole. We affirm.

## I. SENTENCE

On appeal, Carroll argues that the trial court abused its discretion in sentencing him to a maximum prison term of 50 years for second-degree fleeing and eluding. We disagree.

---

[1] MCL 257.602a(4).

[2] MCL 750.227.

[3] MCL 257.625(1)(c).

[4] MCL 257.904. The jury acquitted Carroll of felon-in-possession of a firearm, MCL 750.224f, and possession of a firearm during commission of a felony, MCL 750.227b.

[5] MCL 769.12.

Second-degree fleeing and eluding is punishable by up to 10 years in prison.[6]  A trial court, however, may sentence a fourth habitual offender to "imprisonment for life or for a lesser term."[7]  "A trial court does not abuse its discretion in sentencing an habitual offender within the statutory limits established by the Legislature when the offender's underlying felony, in the context of previous felonies, evinces the defendant's inability to conform his conduct to the laws of society."[8]  Thus, this argument lacks merit.

Carroll also claims that the trial court incorrectly scored offense variables (OV) 9, 17, 18, and 19 by considering facts outside of the elements of the offenses in violation of his Sixth and Fourteenth Amendment rights.  We find no error.  First, Carroll has failed to specifically identify which facts were outside of the elements of the offenses and inappropriately considered by the trial court, and this Court is not required to "discover and rationalize the basis for [Carroll's] claims."[9]  Nonetheless, our review of the record and the scoring of OVs 9,[10] 17,[11] 18,[12] and 19[13] reveals no error by the trial court.

## II. SUPPLEMENTAL STANDARD 4 BRIEF

In two supplemental briefs filed in propria persona pursuant to Supreme Court Administrative Order No. 2004–6, Standard 4, Carroll raises several additional issues.

### A. SUFFICIENCY OF THE EVIDENCE

Carroll argues that there was insufficient evidence to sustain his convictions for second-degree fleeing and eluding and CCW in a vehicle because the testimony of Oakland County

---

[6] MCL 257.602a(4).

[7] MCL 769.12(1)(b).

[8] *People v Reynolds*, 240 Mich App 250, 252; 611 NW2d 316 (2000).

[9] *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

[10] MCL 777.39(1)(c): OV 9 is properly scored at 10 points if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss."

[11] MCL 777.47(1)(a): OV 17 is properly scored at 10 points if "[t]he offender showed a wanton or reckless disregard for the life or property of another person."

[12] MCL 777.48(1)(a): OV 18 is properly scored at 20 points if "[t]he offender operated a vehicle . . . when his . . . bodily alcohol content was 0.20 grams or more per 100 milliliters of blood . . . ."

[13] MCL 777.49(b): OV 19 is properly scored at 15 points if "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services."

police officers Yasser Zora and Neil Dennis violated his constitutional rights and denied him a fair trial. We disagree. Carroll's sufficiency argument is reviewed de novo.[14] Carroll, however, did not preserve his challenge to the admissibility of the officers' testimony, and thus we review his claim of evidentiary error for plain error affecting substantial rights.[15] Reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or . . . seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."[16]

When reviewing the sufficiency of the evidence in a criminal case, an appellate court "reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt."[17] "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict."[18] The prosecutor, however, "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury 'in the face of whatever contradictory evidence the defendant may provide.' "[19] " 'Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' "[20] Identity, which is an element of every offense,[21] may be established by direct or circumstantial evidence.[22]

To convict Carroll of second-degree fleeing and eluding, the jury was required to find that (1) a uniformed police officer, driving a vehicle identified as an official police vehicle and acting in the lawful performance of his or her duty, directed Carroll by visual or audible signal to bring his vehicle to a stop, (2) Carroll willfully failed to obey that direction by increasing the speed of his vehicle or otherwise attempted to flee or elude the officer, and (3) Carroll had "1 or more prior convictions for first-, second-, or third-degree fleeing and eluding, attempted first-, second-, or third-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct."[23]

---

[14] *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

[15] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

[16] *Id*. at 763 (citation and quotation marks omitted; alteration in original).

[17] *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

[18] *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000).

[19] *Id*., quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995).

[20] *Carines*, 460 Mich at 757, quoting *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

[21] *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

[22] *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967).

[23] MCL 257.602a(1), (4)(b).

Zora testified that he was wearing a full police uniform and driving a marked police vehicle when he directed Carroll to stop his vehicle by activating the police car's overhead lights. He explained that while Carroll slowed down briefly, he later fled at a speed of approximately 90 miles an hour. Zora indicated that when he and other officers eventually stopped Carroll's vehicle, he pulled Carroll out of the driver's seat, thus confirming that Carroll had been driving the vehicle during the chase. Finally, Carroll's judgment of sentence for a prior conviction of third-degree fleeing and eluding was admitted as evidence at trial. Thus, there was sufficient evidence to support Carroll's conviction for second-degree fleeing and eluding.[24]

To support a conviction for CCW in a vehicle, "the prosecution must show: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was carrying it."[25] In determining whether a defendant was carrying a weapon, whether the defendant was driving the vehicle containing the weapon and whether the weapon was readily accessible to the defendant may be considered.[26]

Here, Zora testified that Carroll was driving the vehicle. Dennis testified that he saw the driver drop an object out of the driver's side window of the vehicle as the vehicle was being pursued. The path of the object was traced and a gun was found. Thus, viewed in a light most favorable to the prosecution, there was sufficient evidence for the jury to conclude that Carroll was guilty of CCW in a vehicle.[27]

Carroll contends that he was denied the right to a fair trial because Zora and Dennis should not have been allowed to testify as their testimony violated his constitutional rights. Carroll, however, presents no authority to support his argument that the admission of this testimony violated his constitutional rights and denied him a fair trial, meaning this Court need not consider it.[28] Carroll also claims that the officers violated his Fourth Amendment rights because they had no right to make an investigatory stop of his vehicle because there was no evidence that Carroll had done anything wrong before the chase. "[I]f a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation."[29] Based on the record evidence, the vehicle was stopped after it was reported that a Hispanic man was carrying a weapon inside of the Mill Street Bar and then drove away in a

---

[24] See *Robinson*, 475 Mich at 5.

[25] *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999) (citation and internal quotation marks omitted); see also MCL 750.227(2).

[26] See *Nimeth*, 236 Mich App at 622.

[27] See *Robinson*, 475 Mich at 5.

[28] *Kelly*, 231 Mich App at 640-641 ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

[29] *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011).

black HHR. Thus, the stop of the vehicle, which was a black HHR, for further investigation was lawful.[30]

## B. ASSISTANCE OF COUNSEL

Next, Carroll argues that he was denied the effective assistance of counsel at trial on several grounds. We disagree. This Court's review of this unpreserved issue is "limited to errors apparent on the record."[31]

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense."[32] To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."[33] "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy."[34] "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight."[35]

Carroll asserts that his trial counsel was ineffective for failing to file a motion to suppress the video from Zora's dashboard camera, which captured Zora's pursuit of Carroll's vehicle. Carroll argues that the dashboard camera should have been excluded as irrelevant[36] or unfairly prejudicial,[37] but he offers no explanation in support of either argument. It is not for "this Court to discover and rationalize the basis for [Carroll's] claims," so this argument must fail.[38] Carroll also argues that the video should have been excluded as the product of an unlawful stop based on *Terry v Ohio*.[39] As found above, the stop of the vehicle for further investigation was lawful,[40]

---

[30] See *id*.

[31] *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

[32] *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20 and US Const, Am VI.

[33] *Trakhtenberg*, 493 Mich at 51.

[34] *Id*. at 52.

[35] *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

[36] MRE 401.

[37] MRE 403.

[38] *Kelly*, 231 Mich App at 640-641.

[39] 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[40] *Barbarich*, 291 Mich App at 473.

and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."[41]

Carroll also contends that his trial counsel was ineffective for failing to hire an investigator to interview witnesses at the Mill Street Bar, including the person who first contacted the police, or investigate the scene of the incident to discover potentially exculpatory evidence. Carroll, however, does not identify any exculpatory evidence that his trial counsel should have found, much less any that would have negated or contradicted the testimony of Zora and Dennis. Additionally, Carroll's conduct before the police chase is irrelevant to proving whether he was guilty of fleeing and eluding or CCW in a vehicle.[42] Moreover, Carroll's trial counsel elicited Zora's testimony that there were no reports that Carroll had done anything wrong before the chase. Thus, even assuming that trial counsel's performance fell below an objective standard of reasonableness, Carroll is unable to demonstrate that but for the error, he would have been acquitted.[43]

Carroll also argues that his trial counsel was ineffective for failing to introduce a video from Dennis's dashboard camera, which, according to Carroll, would have shown that he did not drop a gun from his window as Dennis suggested. The record evidence, however, fails to show that such a video existed. Additionally, while Carroll further asserts that his trial counsel was ineffective for failing to challenge the quality and accuracy of the video from Zora's dashboard camera, Carroll does not contend that the video was inaccurate in any way. Because Carroll's trial counsel had no duty to raise futile objections, these arguments lack merit.[44]

Finally, Carroll asserts that it was highly prejudicial for his trial counsel to concede to the jury that the person who fled the scene prior to the chase was the one who possessed a gun in the bar and was a passenger in Carroll's vehicle because there was no evidence that this person ever possessed a gun. Defense counsel's attempt to shift the responsibility for carrying the gun away from Carroll was a matter of trial strategy that we will not second-guess on appeal.[45] Accordingly, Carroll has failed to demonstrate that he was denied the effective assistance of counsel at trial.

## C. WAIVER OF ARRAIGNMENT

Lastly, Carroll argues that his conviction must be reversed because his constitutional rights were violated when he failed to knowingly and voluntarily waive his right to an

---

[41] *Ericksen*, 288 Mich App at 201.

[42] See MCL 257.602a(1), (4)(b); *Nimeth*, 236 Mich App at 622.

[43] *Trakhtenberg*, 493 Mich at 51.

[44] *Ericksen*, 288 Mich App at 201.

[45] See *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012); *People v Emerson (After Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994).

arraignment. We find that Carroll is not entitled to relief. This unpreserved issue is reviewed for plain error affecting Carroll's substantial rights.[46]

"Unless the defendant waives arraignment or the court for good cause orders a delay, or as otherwise permitted by these rules, the court with trial jurisdiction must arraign the defendant on the scheduled date."[47] Carroll is correct that his signature is not contained on the waiver of arraignment, nor is his attorney's. Carroll, however, has failed to demonstrate that such error resulted in the conviction of an innocent defendant or seriously affected the fairness of the trial.[48] Thus, reversal is not warranted.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering

---

[46] *Carines*, 460 Mich at 764.

[47] MCR 6.113(A).

[48] See *Carines*, 460 Mich at 763.